**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KINDRED REHAB SERVICES, INC. d/b/a PEOPLE*FIRST* REHABILITATION

PLAINTIFF,

V.

CAMDEN OPERATOR, LLC D/B/A CAMDEN HEALTHCARE AND REHAB CENTER; VINCENNES OPERATOR, LLC D/B/A CRESTVIEW; BLOUNTS OPERATOR, LLC D/B/A GREYSTONE HEALTH CARE CENTER; HUNTING OPERATOR, LLC D/B/A HUNTINGDON HEALTH AND REHABILITATION CENTER; JEFFERSON OPERATOR, LLC D/B/A JEFFERSON CITY HEALTH AND REHAB CENTER; BOLIVAR OPERATOR, LLC, D/B/A PINE MEADOWS HEALTHCARE; MEMPHIS OPERATOR, LLC D/B/A SPRING GATE REHABILITATION HEALTHCARE CENTER; and WHITEHOUSE OPERATOR, LLC D/B/A WHITEHOUSE COUNTRY MANOR,

DEFENDANTS.

**09 Civ.** 06022 BSJ
ECF CASE
**COMPLAINT**

* * * * *

Plaintiff, Kindred Rehab Services, Inc. d/b/a People*first* Rehabilitation ("People*first*"), states as follows for its Complaint against defendants, Camden Operator, LLC d/b/a Camden Healthcare and Rehab Center, Vincennes Operator, LLC d/b/a Crestview, Blounts Operator, LLC d/b/a Greystone Health Care Center, Hunting Operator, LLC d/b/a Huntingdon Health and Rehabilitation Center, Jefferson Operator, LLC d/b/a Jefferson City Health and Rehab Center, Bolivar Operator, LLC, d/b/a Pine Meadows Healthcare, Memphis Operator, LLC d/b/a Spring

Gate Rehabilitation, Healthcare Center, and Whitehouse Operator, LLC d/b/a Whitehouse Country Manor (collectively, the "Northpoint Operators"):

## INTRODUCTION

1. This action arises out of defendants' failure to pay People*first* for therapy services provided by People*first* to the residents of facilities located in Tennessee, Ohio and Indiana and for the improper solicitation of People*first* employees. The defendants have already received reimbursement from Medicare for the services that People*first* provided, and under the Therapy Services Agreements defendants are required to hold those funds in trust for People*first* and to pay those funds to People*first*. In violation of the Therapy Services Agreements, the defendants have failed and refused to pay People*first*.

## THE PARTIES AND JURISDICTION

2. People*first* is the assumed named of Kindred Rehab Services, Inc., a Delaware corporation, with its principal place of business in Jefferson County, Kentucky. People*first* provides therapy services to residents of long-term care and skilled nursing facilities.

3. Camden Operator, LLC is a foreign Limited Liability Company operating a skilled nursing facility in Camden, Tennessee.

4. Vincennes Operator, LLC is a foreign Limited Liability Company operating a skilled nursing facility in Vincennes, Indiana.

5. Blounts Operator, LLC is a foreign Limited Liability Company operating a skilled nursing facility in Blountsville, Tennessee.

6. Hunting Operator, LLC is a foreign Limited Liability Company operating a skilled nursing facility in Huntingdon, Tennessee.

7. Jefferson Operator, LLC is a foreign Limited Liability Company operating a skilled nursing facility in Jefferson City, Tennessee.

8. Bolivar Operator, LLC is a foreign Limited Liability Company operating a skilled nursing facility in Bolivar, Tennessee.

9. Memphis Operator, LLC is a foreign Limited Liability Company operating a skilled nursing facility in Memphis, Tennessee.

10. Whitehouse Operator, LLC is a foreign Limited Liability Company operating a skilled nursing facility in Whitehouse, Ohio.

11. Service of Process may be made upon each of the defendant Northpoint Operators through Northpoint Senior Services, Inc., 7400 New LaGrange Road, Suite 100, Louisville, KY 40222, with a copy to Novack Burnbaum Crystal, LLP, 300 East 42nd Street, 10th Floor, New York, NY 10017, pursuant to the defendants' previous agreement.

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between People*first*, on the one hand, and all defendants, on the other hand, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Defendants are subject to personal jurisdiction in the State of New York, and venue in this action is proper in this District pursuant to defendants' previous agreement.

**BACKGROUND FACTS**

14. Effective February 1, 2007, People*first* entered into agreements with the Northpoint Operators to provide therapy services at agreed prices (the "Therapy Services Agreements").

15. People*first* performed all obligations required of it under the Therapy Services Agreements, submitted monthly invoices, and otherwise satisfied all conditions precedent to payment.

16. Through September 30, 2008, defendants received services from People*first* at a total cost of approximately $1,631,616.43, which defendants have failed and refused to pay People*first*.

17. Pursuant to the Therapy Services Agreements, defendants are obligated to pay for the services provided by People*first*.

18. Despite repeated demands for the sums due and owing under the Therapy Services Agreements, defendants have failed and refused to pay for services provided by People*first* before September 30, 2008. The outstanding balances are accruing interest from the date each invoice was due at the rate of one and one-half percent (1 ½ %) per month, pursuant to paragraph 4(c) of each Therapy Services Agreement.

19. People*first* conferred with defendants numerous times regarding outstanding invoices for services provided and amounts past due and made repeated demands for payment.

20. During conferences between defendants and People*first*, defendants represented to People*first* that the outstanding invoices would be paid and requested that People*first* continue to provide services in accordance with the Therapy Services Agreements.

21. People*first* relied upon defendants' representations in continuing to provide services.

22. Despite People*first*'s billing and repeated demands for sums due and owing, and conferences regarding amounts outstanding, defendants failed to pay for services provided by People*first*.

23. Upon information and relief, defendants have been reimbursed by Medicare or other third party payors for all or a significant portion of the services provided by People*first*, and have directly or indirectly benefited from such reimbursement.

24. The Social Security Act and the Centers for Medicare & Medicaid Services ("CMS") require operators such as the defendants to pay suppliers of services, like People*first*, for services provided and reimbursed by Medicare. When an operator fails to reimburse the supplier for services – as happened here – then Medicare deems there to have been no valid services agreement, which then triggers adverse consequences for the operator, potentially including civil penalties and repayment of the reimbursed amounts, or revocation of the provider agreement.

25. Each Therapy Services Agreement provides that the respective Northpoint Operator shall be considered to have materially breached its respective Therapy Services Agreement if it fails to pay any invoice for rehabilitation services within seventy-five days after the date of the invoice.

26. Each Therapy Service Agreement allows People*first* to terminate the agreement for non-payment without any notice or opportunity to cure by the Northpoint Operator.

27. People*first* terminated the Therapy Services Agreements effective September 30, 2008 for non-payment after giving written notice of breach and termination to defendants on August 28, 2008. Written notice of breach and termination was not required, but People*first* nevertheless gave notice in an attempt to assist defendants in mitigating their breach or potentially avoid termination.

28. Paragraph 6 of each Therapy Services Agreement contains a one-year post-termination non-solicitation provision prohibiting the direct or indirect solicitation and the direct

or indirect employment by the Northpoint Operators (or any subsequent provider of therapy services to any Northpoint Operator) of any People*first* employee.

29. Each Northpoint Operator agreed and acknowledged that People*first* could not be adequately compensated by damages for breach of the non-solicitation provision, and therefore each Northpoint Operator also agreed and acknowledged that People*first* "shall be entitled to injunctive relief and specific performance in addition to all other remedies," including liquidated damages in the amount of twenty-five percent of any solicited or hired employee's base salary then in effect.

30. The non-solicitation provision of each Therapy Services Agreement survives the termination of the agreement.

31. Defendants have directly or indirectly (through new providers of services) solicited and hired employees of People*first*.

32. Paragraph 7(o) of each Therapy Services Agreement provides that: "If this Agreement requires the engagement of an attorney(s) to enforce any of the terms or conditions in this Agreement, the prevailing party (whether litigation is filed or not) shall be entitled to reasonable attorneys' fees and costs from the non-prevailing party in accordance with applicable state or commonwealth and federal law."

33. Defendants have failed to perform the payment obligations under the Therapy Services Agreement. As a result, People*first* has incurred attorney fees and other costs in preparing and filing this action, all of which are the responsibility of defendants. People*first* is likely to incur substantial additional attorney fees as this case is litigated and prepared for trial, which also shall be the responsibility of defendants.

**COUNT I: Breach of Contract – Failure to Pay for Services**

34. People*first* incorporates by reference the allegations previously set forth in this Complaint.

35. Without legal justification or excuse, defendants materially breached the Therapy Services Agreements by failing to pay sums due and owing for the services provided.

36. Also without legal justification or excuse, the defendants have committed an anticipatory breach of the Therapy Services Agreements by their unequivocal words and conduct evidencing their intent to repudiate the Agreements.

37. In addition to the express terms of the Agreement, defendants are obligated by law to perform the terms and conditions of the Therapy Services Agreements in good faith and by fair dealing.

38. Defendants have failed and refused to act in good faith and by fair dealing, have breached the express terms of the Therapy Services Agreements, and have failed and refused to pay People*first* the amounts due under the Therapy Services Agreements.

39. As a direct and proximate result of defendants' breach of the Therapy Services Agreements, People*first* has suffered damages for services provided.

40. Interest is accruing on all unpaid balances from the date each invoice was due at the rate of one and one-half percent (1 ½ %) per month, pursuant to paragraph 4(c) of each Therapy Services Agreement.

41. A constructive trust should be imposed on all proceeds which have been, or hereafter are, received by defendants as reimbursement by Medicare for therapy and rehabilitation services provided by People*first*, plus interest, costs and attorney fees.

**COUNT II: Breach of Contract – Non-Solicitation Provisions**

42. People*first* incorporates by reference the allegations previously set forth in this Complaint.

43. Without legal justification or excuse, defendants materially breached the provisions of the Therapy Services Agreements that prohibit the direct or indirect solicitation or employment of any People*first* employee.

44. As a direct and proximate result of defendants' breach of the Therapy Services Agreements, People*first* has suffered damages for services provided.

45. As a result of the breach of the non-solicitation provisions, People*first* has suffered immediate and irreparable injury and will continue to suffer immediate and irreparable injury in violation of its contractual rights unless the Northpoint Operators are immediately and permanently restrained and enjoined from such activity by Order of this Court.

46. People*first* has no adequate remedy at law or otherwise to address this injury, save in a court of equity.

47. In addition to the incalculable damages for which injunctive relief is sought, as a result of the breach of the Therapy Services Agreements, People*first* has also suffered certain other calculable injury and damages, in an amount to be determined by the evidence at trial. Alternatively, People*first* is entitled to liquidated damages in an amount equal to twenty-five percent of any solicited or hired employee's annual base salary in effect at the time of the solicitation or hiring.

**COUNT III: Unfair and Deceptive Trade Practices**

48. People*first* incorporates by reference the allegations previously set forth in this Complaint.

49. Defendants' acts of accepting services from People*first*, receipt of reimbursement from Medicare or other third party payors, and refusal to pay People*first* for services provided constitute unfair, deceptive and illegal acts. As a direct and proximate result of the these acts, People*first* has suffered substantial injuries and damages, financial losses and attorney fees

**COUNT IV: Conversion**

50. People*first* incorporates by reference the allegations previously set forth in this Complaint.

51. The defendants, acting in concert, knowingly and intentionally exerted unauthorized dominion control over People*first*'s accounts receivable and payments by actual possession of Medicare reimbursements, such that People*first* has been completely deprived of its rights and control in that property.

52. The failure and refusal of defendants to pay People*first* constitutes conversion.

53. As a direct and proximate result of the defendants' conversion, People*first* has suffered substantial injuries and damages, financial losses and attorney fees.

54. The conversion of People*first*'s assets was done with gross negligence and reckless disregard for People*first*'s rights, so that People*first* is entitled to an award of punitive damages against defendants.

**COUNT V: Promissory Estoppel**

55. People*first* incorporates by reference the allegations previously set forth in this Complaint.

56. Defendants made promises to People*first* for the purpose of inducing it to continue providing services under the Therapy Services Agreements.

57. People*first* reasonably relied upon such promises made by defendants.

58. Defendants' promises and People*first*'s detrimental reliance thereon resulted in damages to People*first* and People*first* is entitled to recover damages in an amount to be proven at trial.

**COUNT VI: Unjust Enrichment and Quantum Meruit**

59. People*first* incorporates by reference the allegations previously set forth in this Complaint.

60. People*first* has provided valuable services to defendants for which it has not been paid.

61. People*first*'s services were rendered under circumstances pursuant to which defendants reasonably should have expected People*first* would expect to be compensated.

62. Defendants have knowingly and willingly received, or will receive, reimbursement by Medicare for services by People*first*, and have wrongfully and intentionally withheld or will withhold such amounts from People*first*.

63. Consequently, defendants have been unjustly enriched through the receipt of such services and reimbursement at the expense of People*first*.

64. Furthermore, defendants have a legal and fiduciary duty to immediately remit proceeds received in reimbursements from Medicare to People*first* if they have not timely paid invoices as required by the Therapy Services Agreements.

65. For these reasons, a constructive trust should be imposed on all proceeds which have been, or hereafter are, received by defendants as reimbursement by Medicare for therapy and rehabilitation services provided by People*first*, plus interest, costs and attorney fees.

**COUNT VII: Account Stated**

66. People*first* incorporates by reference the allegations previously set forth in this Complaint.

67. Pursuant to the Therapy Services Agreements, defendants agreed to pay People*first* for the services it supplied.

68. People*first* delivered invoices for services rendered by People*first* to defendants.

69. Without justification, excuse or dispute of such invoices, defendants have not paid People*first* any part of the invoices at issue.

**PRAYER FOR RELIEF**

Accordingly, plaintiff People*first* requests the following:

1. An award of monetary relief against defendants, jointly and severally, including compensatory damages, liquidated damages, punitive damages, and exemplary damages;

2. An award of specific performance and immediate, temporary and permanent equitable relief restraining any further direct or indirect solicitation or employment of People*first* employees by defendants or other providers of therapy services to the Northpoint Operators;

3. Imposition of a constructive trust for the benefit of People*first* over all sums received by defendants as Medicare or other reimbursement for therapy and rehabilitation services provided by People*first* and not paid for by defendants;

4. An equitable accounting of all past and possible or expected future sums received by defendants as Medicare reimbursement for therapy and rehabilitation services provided by People*first*;

5. An award of attorney fees, costs and expenses incurred in enforcing the Therapy Services Agreements and in prosecuting this action;

6. Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

7. All other legal, equitable or declaratory relief to which People*first* may be entitled.

Dated: June 30, 2009

Respectfully submitted,

TACHAU MEEK PLC
Jonathan T. Salomon (JS-1373)

2400 National City Tower
101 South Fifth Street
Louisville, KY 40202-3115
502.238.9900
502.238.9910 (telecopy)
jsalomon@tachaulaw.com

*Counsel for Kindred Rehab Services, Inc., d/b/a Peoplefirst Rehabilitation*

*and*

David Tachau*
Brian F. Haara*
TACHAU MEEK PLC
2400 National City Tower
101 South Fifth Street
Louisville, KY 40202-3115
502.238.9900
502.238.9910 (telecopy)
dtachau@tachaulaw.com
bhaara@tachaulaw.com

*Co-counsel for Kindred Rehab Services, Inc., d/b/a Peoplefirst Rehabilitation*

* *Pro hac vice* application to be filed